UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BRINON K. CORNISH, Executor of the                                        PLAINTIFF
Estate of DONNA MAE CORNISH


v.                                                        CIVIL ACTION NO. 3:06-CV-344-S


UNITED STATES LIFE INSURANCE COMPANY                                      DEFENDANTS
IN THE CITY OF NEW YORK, et al.


## MEMORANDUM OPINION

This matter is before the court upon the briefs of the parties regarding the court's subject matter jurisdiction. This underlying facts of this case involve the death of Donna Mae Cornish who died in her bathtub as a result of alcohol intoxication. At the time, the deceased was employed by National Processing Company ("NPC"), and through her employment she received basic life and accidental death and dismemberment ("AD&D") insurance coverage (hereinafter "the Policy"). The Policy was underwritten and marketed respectively by the defendants, United States Life Insurance Company in the City of New York and American General Life Companies, LLC (collectively "AIG"). After determining that the Policy was effective at the time of Ms. Cornish's death, AIG paid basic life insurance benefits to the Policy beneficiaries. AIG, however, denied benefits under the AD&D claim based upon an intoxication exclusion in the Policy.

Thereafter, the plaintiff and executor of Ms. Cornish's estate, Brinon K. Cornish ("Cornish"), filed suit in Jefferson Circuit Court, Louisville, Kentucky, seeking payment of benefits for AD&D. AIG subsequently removed the case to this court on grounds that Cornish is asserting a claim for benefits under an employee benefit plan established and governed by ERISA.

During an October 10, 2006, telephonic scheduling conference Cornish raised certain issues regarding this court's jurisdiction. Specifically, he questioned whether the Policy qualified as an ERISA plan. Cornish argues that because the Policy was in draft form and had not received final

approval at the time of Ms. Cornish's death, it does not qualify as an employee benefit plan under ERISA.

## ANALYSIS

Pursuant to 29 U.S.C. § 1132(e), original jurisdiction is conferred upon the district court of the United States over claims initiated by participants or beneficiaries to recover benefits due or to enforce rights under employee benefit plans subject to ERISA. *Id.* In *Metro. Life Ins. Co. v. Taylor.*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55, the Supreme Court emphasized that § 1132(e) "provides an exclusive federal cause of action for resolution" of a suit brought by a beneficiary seeking to recover under an employee benefit plan. *Id.* at 62-63.

Employee benefit plans include "any plan, fund, or program which . . . is . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). A three-step inquiry is employed to determine whether a plan, fund, or program qualifies as such:

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA.
>
> Second, the court must look to see if there was a "plan" by inquiring "from the surrounding circumstances a reasonable person [could] ascertain the intended beneficiaries, the class of beneficiaries, the source of financing, and procedures for receiving benefits."
>
> Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434-435 (citations omitted).

With regard to the first inquiry, the safe harbor regulations exclude an employee insurance policy from ERISA coverage if:

> (1) The employer makes no contribution to the policy;
>
> (2) Employee participation in the policy is completely voluntary;
>
> (3) The employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and
>
> (4) The employer received no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Thompson*, 95 F.3d at 435.

First, under the terms of the Policy, NPC made contributions to the plan by providing premiums for basic life and AD&D benefits at no cost to its employees. Second, NPC's employees' participation in the plan was not completely voluntary as benefits were provided regardless of an employee's decision to participate in the plan. All four criteria must be satisfied for a plan to be exempt under ERISA. *Id.* Because neither the first nor the second requirements are satisfied, the Policy does not qualify for ERISA exemption. The first inquiry is met.

With regard to the second inquiry, Cornish asserts that because the Policy was still in draft form at the time of Ms. Cornish's death, its terms were never communicated to her, and that as such "a reasonable person could not ascertain the claimed limitations of the intended benefit" under the policy. Thus, according to Cornish, the Policy fails to qualify as an employee benefit plan under ERISA. We find no merit to Cornish's argument.

Whether the Policy was in draft or final form, its language clearly calls for benefits by providing a Schedule of Benefits, an explanation of the class of beneficiaries, the source of financing, and the procedures for receiving both basic life and the AD&D benefits. Furthermore, Cornish cites no case which interprets ERISA to exclude an otherwise qualified plan from being an employee benefit plan if that plan is in draft form. The second inquiry is satisfied.

The third inquiry is also satisfied. The requirement that NPC have "established or maintained" the Policy with the intent of providing benefits to its employees is clearly shown by the fact that Cornish received basic life benefits under the Policy. Thus, the Policy's "draft" status on the date of Ms. Cornish's death is irrelevant. Moreover, Cornish's acceptance of those benefits makes it difficult for him to argue that the Policy was "established and maintained" for one purpose but not for another.

Accordingly, the court finds that the Policy is an employee benefit plan governed by ERISA, and that as such, we maintain original jurisdiction over this matter.